# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SANGKI CHONG, Personal Representative of the ESTATE OF YONG SUK CHONG,<br><br>          Plaintiff,<br>  v.<br><br>NATIONAL CONTINENTAL INSURANCE COMPANY,<br><br>          Defendant,<br>_____<br><br>NATIONAL CONTINENTAL INSURANCE COMPANY,<br><br>          Counterclaimant,<br>  v.<br><br>SANGKI CHONG, Personal Representative of the ESTATE OF YONG SUK CHONG,<br><br>          Counterdefendant, | Case No. 3:15-cv-0014-RRB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AT DOCKET 18 AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AT 23** |

## I. INTRODUCTION

The estate of Yong Suk Chong ("the Estate") has filed the present action against

National Continental Insurance Company ("NCIC") seeking compensation from an

automobile insurance policy's uninsured motorist coverage. NCIC filed a counterclaim for declaratory relief arguing that there was no uninsured motorist coverage applicable under the terms of the policy of insurance.

NCIC has filed a Motion for Summary Judgment at **Docket 18**. The Estate opposes at Docket 22 and Defendant replies at Docket 27. Additionally, the Estate has filed a Cross-Motion for Summary Judgment With Respect to the Counter-Claim for Declaratory Relief at **Docket 23**. NCIC opposes at Docket 28 with the Estate replying at Docket 34.

**II. BACKGROUND**

Yong Suk Chong and Yun Yi were domestic partners living in Bethel, Alaska, where Mr. Yi owned and operated a taxi business with Ms. Chong employed as a cab driver. NCIC issued business automobile insurance policy number 71244561 ("the Policy") to Mr. Yi and Ms. Chong was listed as an authorized driver on the Policy. The Policy was in effect at all times relevant to this matter.

In the early morning hours of January 31, 2012, Kyle Motgin ("Motgin") was in Bethel and called for a taxi to pick him up.[1] Yong Suk Chong responded to the call, driving a 2005 Lexus ("the Taxicab") which was insured under the Policy. Motgin got into the front passenger seat and stated he wanted to be taken to Napakiak. Because the only way to travel by automobile to Napakiak from Bethel was on the frozen Kuskokwim River, which required

---

[1] Docket 24, Exhibit 1 (Affidavit of Kyle Motgin).

a permit she did not possess, Ms. Chong informed Motgin that she could not take him to Napakiak. Motgin was angered by Ms. Chong's refusal and an argument ensued. At some point Ms. Chong tried to push Motgin out of the Taxicab, and the situation became violent. Motgin used a knife in his possession to cut Ms. Chong, then pulled Ms. Chong across the passenger seat, and pushed her out of the door of the Taxicab. After Ms. Chong was outside the vehicle, Motgin exited the Taxicab and put Ms. Chong in the backseat. When this occurred, Motgin believes Ms. Chong was still alive. With Ms. Chong in the backseat of the vehicle, Motgin began driving the Taxicab to Napakiak. While he was traveling to Napakiak, Motgin stopped the vehicle to throw away an empty whiskey bottle and it is Motgin's belief that Ms. Chong was still alive.

On February 1, 2012, the Taxicab was located in Napakiak, Alaska, and Ms. Chong's dead body was found in the backseat of the vehicle. Motgin was later arrested and pled guilty to murder in the second degree for killing Ms. Chong. He was sentenced to 80 years in prison with 35 years suspended.

The Estate has brought the present suit seeking uninsured motorist coverage under the Policy covering Ms. Chong's Taxicab for damages the Estate suffered as a result of Motgin's actions. The Policy provides that NCIC will pay compensatory damages an insured is entitled

to recover from the driver of an uninsured motor vehicle for injury or death when the liability for these damages results from the use of the vehicle.[2]

## III. STANDARD OF REVIEW

Summary judgment avoids unnecessary trials when there is no dispute as to the facts in the matter before the court.[3] The evidence of the nonmoving party is to be believed and all reasonable inferences are drawn in his favor.[4] Summary judgment is appropriate where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[5] The opposing party must produce sufficient evidence to demonstrate that a triable issue of fact exists.[6] However, once the moving party has met the initial responsibility, the opposing party cannot then meet its burden to show genuine disputed facts simply by offering conclusory statements unsupported by factual data.[7]

The Court recognizes that Alaska substantive law governs this diversity action. When interpreting an insurance policy, Alaska law instructs courts to look to the language of the

---

[2] Docket 19, Exhibit 1 at 15.

[3] *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted).

[4] *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[5] *Id*. (*quoting* Fed. R. Civ. P. 56(a)).

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 50 (1986). *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[7] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

disputed provision, other provisions in the policy, extrinsic evidence, and case law interpreting similar provisions.[8] Insurance policies are construed in a manner that honors a lay insured's reasonable expectations.[9] Any ambiguity should be construed in favor of the insured and against the insurer.[10] Also, grants of coverage should be viewed broadly, while exclusions should be viewed narrowly.[11] Yet where a reasonable lay interpretation of the policy would not encompass coverage under the circumstances, there is no ambiguity and therefore no coverage.[12]

## IV. DISCUSSION

As an initial matter, the Court finds there to be two separate acts at issue here. First, Motgin's assault on Ms. Chong with his knife ("the Assault") and second, his subsequent placement and transportation of her wounded body in back of the Taxicab ("the Transportation"). The Court finds that Motgin was not operating a vehicle during the Assault, nor did Ms. Chong suffer any further injuries at the hands of Motgin during the Transportation.[13]

---

[8] *Allstate Ins. Co. v. Teel*, 100 P.3d 2, 4 (Alaska 2004).

[9] *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008).

[10] *Id.*

[11] *State Farm Mut. Auto. Ins. Co. v. Houle*, 269 P.3d 654, 658 (Alaska 2011).

[12] *Makarka ex rel. Makarka v. Great Am. Ins. Co.*, 14 P.3d 964, 969 (Alaska 2000).

[13] The Court notes the Estate's assertion that Motgin's transportation of Ms. Chong away from medical help contributed to her death, however the Estate has not alleged that this act of negligence actually caused or increased any bodily injury that led to Ms. Chong's death beyond simply preventing treatment.

## A. Taxicab Was Not An "Uninsured Motor Vehicle" Under the Policy

NCIC asserts that the Estate is not entitled to uninsured motorist benefits because language in the Policy provide that "an uninsured motor vehicle" means a vehicle for which no liability policy applies at the time of the accident. Because the Taxicab was insured for liability claims, NCIC argues it could not meet the definition of an "uninsured motor vehicle."

The Estate argues that because Motgin's use of the Taxicab was unauthorized, liability coverage would not apply. Accordingly, the Taxicab should therefore be considered an "uninsured motor vehicle." Moreover, the Estate argues that the only restriction on uninsured motorist coverage is that the party seeking coverage must be "an insured" who is injured by another who is not insured.

However, in order to provide coverage, the uninsured party must also have been *a motorist*. As the Estate points out, AS 28.20.445 is entitled "Uninsured and underinsured motorists coverage," not uninsured and underinsured vehicle coverage.[14] Because Ms. Chong remained in the driver's seat of the Taxicab during the entirety of the Assault, the Court cannot find that Motgin was a motorist at the time of the Assault. He was a passenger attacking a motorist. Motgin only took unauthorized control of the vehicle and became a motorist after Ms. Chong had already been stabbed and forcibly removed from the vehicle.

---

[14] Docket 34 at 3.

There is no indication that Motgin was a motorist or operator of any vehicle during the Assault. He only became such during the Transportation. Even if the Taxicab was considered uninsured once Motgin took control and became a motorist, which NCIC disputes, the Taxicab remained an insured vehicle driven by Ms. Chong at the time of her injuries. Accordingly, the Court finds the Taxicab was not an uninsured vehicle and that Motgin was not an uninsured motorist at the time the bodily injury occurred. Therefore, the Policy's uninsured motorist coverage does not apply.

### B. Injury Did Not Arise Out of the "Use" of the Taxicab

Even if Motgin was found to be an uninsured motorist and the Taxicab was an uninsured vehicle at the time of Ms. Chong's injuries, the injuries must result from the *use* of the Taxicab for the Policy to provide coverage. The Alaska Supreme Court has addressed this aspect of uninsured motorists coverage before.[15]

This Court recognizes that in Alaska there are three factors which a court should consider when deciding whether, based on the facts of a particular case, an injury arises from the "use" of a vehicle which is sufficient to implicate uninsured motorist coverage. These factors are:

(1)   The extent of causation between the automobile and the injury;

---

[15] *See Kalenka v. Infinity Ins. Companies*, 262 P.3d 602, 609 (Alaska 2011); *Shaw v. State Farm Mut. Auto. Ins. Companies*, 19 P.3d 588 (Alaska 2001); *Criterion Ins. Co. v. Velthouse*, 751 P.2d 1 (Alaska 1986).

(2) Whether an act of independent significance occurred, breaking the causal link between "use" of the vehicle and the injuries inflicted; and

(3) What type of "use" of the automobile was involved.

Accordingly, the Court addresses each of these factors in the present case.

**(1) Extent of Causation Between Automobile and Injury**

In Alaska, the vehicle must be an "active accessory" for there to be an adequate causal relationship.[16] Where the vehicle was "only the subject of their fight" and played no part in the fight itself there is insufficient causation to say the injuries have arisen out of the "use" of the vehicle.[17]

In the present matter, the Taxicab and its use were only the subject of the fight. Motgin entered the Taxicab to discuss a potential use of the Taxicab. Ms. Chong and Motgin, while sitting in the parked Taxicab, disagreed over whether or not Ms. Chong would use the Taxicab to drive Motgin to Napakiak. Motgin repeatedly stabbed Ms. Chong after she refused to use her Taxicab as he requested and attempted to force him from the Taxicab. The Estate has argued that the Transportation must be included in evaluating the "use" of the Taxicab in this matter. As discussed previously, there has been no indication that any bodily injury occurred after the Assault. While the Court acknowledges that the Transportation prevented Ms. Chong from receiving medical treatment and may have made Motgin liable

---

[16] *Kalenka v. Infinity Ins. Companies*, 262 P.3d 602, 609 (Alaska 2011).
[17] *Id.*

for negligence, this does not serve as a causal link between the automobile and the actual injury that led to her death.

The Court finds that the Taxicab was not an active accessory to Ms. Chong's injury and accordingly, the extent of causation between the Taxicab and Ms. Chong's injury weighs against coverage under the Policy.

### (2) Act of Independent Significance Breaking Causal Link

As discussed previously, the Court finds there to be a delineation between the Assault and the Transportation in this matter. This clear distinction already suggests a lack of a causal link between the use of the Taxicab and Ms. Chong's bodily injuries. An evaluation of Motgin's violent assault on Ms. Chong as an act of independent significance only further disputes a causal link.

An act of violence can break the causal nexus between the "use" of a vehicle and the injuries inflicted.[18] Motgin's violent actions during the Assault were independent from the transportation intended by Ms. Chong on her arrival. After the Assault, Motgin then took control of the Taxicab as the driver, Ms. Chong then became an injured passenger in the backseat, and the two drove away. Were it not for Motgin's violent actions, Motgin would never have become a motorist and operated the Taxicab, Ms. Chong would not have received any bodily injuries, and there would have been no transportation provided. Therefore, the

---

[18] *Kalenka*, 262 P.3d at 609 (citing *Shaw*, 19 P.3d at 591-93).

Court finds that Motgin's actions were of sufficient independent significance to disrupt any causal link that may be found between Ms. Chong's bodily injuries and the use of the Taxicab.

### (3) Type of Automobile Use Involved

The parties seem to agree that coverage should exist only if the injuries resulted from the Taxicab being used for transportation purposes.[19] NCIC argues that Ms. Chong's vehicle was not used for transportation when Motgin attacked her because the vehicle was parked and not moving.[20] The Estate, on the other hand, asserts that the Taxicab was being used for transportation purposes for the entirety of this matter, as Motgin entered the Taxicab to be transported, stabbed Ms. Chong over a disagreement on transportation, and then used the Taxicab to drive Ms. Chong and himself toward Napakiak.[21] As the use of the Taxicab "depends, to a great degree, on the particular facts of the case," the Court finds added benefit from evaluating the actions of the party within the Taxicab that led to the bodily injuries, rather than on either the locomotion or potential use of the car alone.[22]

The parties have made no assertion that Ms. Chong was obligated to transport Motgin and so Motgin presumably entered Ms. Chong's Taxicab to negotiate for transportation.[23] He

---

[19] Docket 24 at 14, Docket 27 at 14.
[20] Docket 27 at 14.
[21] Docket 34 at 23.
[22] *Shaw*, 19 P.3d at 593.
[23] *See* Docket 24, Exhibit 1.

made an offer—transportation to Napakiak for payment—and Ms. Chong declined his offer, then asked Motgin to get out. Ms. Chong's refusal to accept Motgin's offer led to the agitation, assault, and injuries to Ms. Chong in the Taxicab. It would have been just as possible for the negotiation to have happened with Motgin standing next to the Taxicab or even with both parties standing outside the vehicle as with them sitting inside. The Court finds the use of the Taxicab in this matter to be more akin to the vehicle in *Criterion Insurance v. Velthouse*, where the Alaska Supreme Court held that there was no coverage where the "vehicle was the mere situs of the accident."[24]

While the use of the Taxicab for transportation can be connected to the events that led to Ms. Chong's bodily injuries and eventual death, the negotiation of transportation is not a type of use of an automobile this Court finds sufficient to support coverage under the Policy.

## V. CONCLUSION

For the reasons set forth above, the Court finds that the Taxicab was not uninsured nor was Motgin an uninsured motorist when Ms. Chong suffered her bodily injuries, and even if they were, the bodily injuries suffered by Ms. Chong did not arise out of the use of the Taxicab. Accordingly, NCIC's Motion for Summary Judgment at **Docket 18** is hereby **GRANTED** and the Estate's Cross-Motion for Summary Judgment With Respect to the

---

[24] 751 P.2d 1 (Alaska 1986).

Counter-Claim for Declaratory Relief at **Docket 23** is **DENIED** and this matter is **DISMISSED** in its entirety.

The hearing scheduled for June 28, 2016, is hereby VACATED.

**IT IS SO ORDERED** this 24th day of May, 2016.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE